EDOK Criminal Complaint (Revised 6/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **ESWIN NOEL GOMEZ,** *Defendant.* | **CRIMINAL COMPLAINT** Case No.   21-MJ-413-KEW |

I, Special Agent Pablo Orejuela, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about November 3, 2021, in the Eastern District of Oklahoma, defendant violated Title 21, United States Code, Section(s) 841(a)(1) and 841(b)(1)(A), an offense described as follows:

Possession of Methamphetamine with Intent to Distribute, 500 Grams or More

I further state that I am a Special Agent with the Drug Enforcement Administration, and that this complaint is based on the following facts:

(See attached Affidavit of Pablo Orejuela, which is attached hereto and made a part hereof by reference.)

☒   Continued on the attached sheet.

Pablo Orejuela, Special Agent DEA
Complainant

Sworn to before me and subscribed in my presence at: MUSKOGEE, OKLAHOMA

Date: November 4, 2021

**UNITED STATES MAGISTRATE JUDGE**
Name and Title of Judicial Officer

Signature of Judicial Officer



## AFFIDAVIT IN SUPPORT OF A COMPLAINT

1. I, Pablo Orejuela, a Special Agent with the Drug Enforcement Administration, having been duly sworn, do depose and state the following:

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since July 17, 2020. Prior to my career with DEA as a Special Agent, I was employed by the State of Texas for approximately five years as a State Trooper with the Department of Public Safety. As a part of this position, I enforced traffic and criminal laws on highways and rural areas. My duties as a Texas State Trooper also included investigating crashes, administering standard field sobriety tests, fugitive arrests, highway criminal interdiction, drafting and obtaining state search warrants and courtroom testimony.

3. I have attended training specific to the investigation of illegal drug offenses provided by the Texas Department of Public Safety and DEA. My experience includes, but is not limited to roadside investigations, interviews, and executing vehicle searches relating to numerous offenses including drug crimes. I have consulted with other experienced officers in narcotics investigations, and I have worked with other local, state, and federal law enforcement agencies.

4. I have written, planned, and executed search warrants, and have testified under oath in court. Through this training and experience, I have become especially familiar with the techniques and operations of those involved in the drug trade and their day-to-day activities.

5. My experience includes, but is not limited to patrol, investigations, conducting physical surveillance, and executing search warrants relating to numerous offenses including drug crimes. I have experience in investigating drug cases that have led to the successful prosecution of persons involved in various drug and weapon offenses. I have consulted with other experienced officers in narcotics investigations, and I have worked with other local, state, and federal law enforcement agencies.

6.      I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information from discussions with other experienced law enforcement officers.

7.      Based upon the following facts, I believe that probable cause exists to show that **Eswin Noel GOMEZ** did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause.

## PROBABLE CAUSE

8.      On or about November 3, 2021, at approximately 2:30 PM, Oklahoma Highway Patrol Trooper Cody Hyde observed a silver Ford Escape traveling eastbound at 67 miles per hour in a clearly posted 60 mile per hour construction zone on Interstate 40 near Sallisaw, Sequoyah County, Oklahoma within the Eastern District of Oklahoma. Due to the traffic violation, Trooper Hyde, driving a marked police vehicle, initiated a traffic stop of the Ford Escape. After the Ford stopped, Trooper Hyde noticed the vehicle displayed California license plate 8WKY520. The driver of the Ford Escape presented Trooper Hyde with a California driver license that identified him as **Eswin Noel GOMEZ**. The front passenger was a Hispanic juvenile who presented a Guatemalan passport. **GOMEZ** told Trooper Hyde he was traveling to Raleigh, North Carolina, to visit family and the Ford Escape was a rental. **GOMEZ** presented an expired vehicle rental agreement. Trooper Hyde asked **GOMEZ** to accompany him to his patrol vehicle. While seated in the patrol vehicle, **GOMEZ** told Trooper Hyde that the juvenile was his cousin and that he was going to be in North

Carolina for approximately one week. **GOMEZ's** hands were visibly trembling as he produced his travel documents. Trooper Hyde observed his heart beating rapidly in his chest and stomach and his breathing appeared to be labored. **GOMEZ** continually coughed and cleared his throat throughout the contact.

9.   Trooper Hyde attempted to speak with the juvenile and found he spoke only Spanish. The juvenile stated that he and **GOMEZ** were friends not family. The juvenile also stated that he did not have family in North Carolina and that he and **GOMEZ** were going to visit friends. The juvenile also appeared to be very nervous while talking to Trooper Hyde.

10.  After Trooper Hyde issued **GOMEZ** a warning notice and returned all travel documents, **GOMEZ** thanked Trooper Hyde and began to step out of the patrol unit when Trooper Hyde asked if **GOMEZ** would mind answering a few additional questions. **GOMEZ** leaned back into Trooper Hyde's vehicle and agreed to answer additional questions. Trooper Hyde, using his limited knowledge of the Spanish language, asked if there were any weapons or drugs concealed in the vehicle. **GOMEZ** denied the presence of weapons or drugs in the Ford Escape. Trooper Hyde asked **GOMEZ** if he could search **GOMEZ**'s vehicle and **GOMEZ** consented to the search.

11.  Trooper Clint Craft arrived on scene and assisted Trooper Hyde with the search of the Ford Escape. Trooper Hyde located a gift-wrapped box in the rear cargo area of the SUV. The card attached to the gift only said "Happy Birthday" in Spanish but did not have a name on it. Trooper Hyde shook the box and it felt heavy on one end. Trooper Hyde removed the wrapping paper from the box and the tape appeared to have been tampered with. The box was that of a Barbie car child's toy. Upon opening the box and removing the toy, Trooper Hyde observed several vacuum sealed bundles of a clear crystalline substance that appeared to be methamphetamine. Both **GOMEZ** and the juvenile were placed under arrest. A further search of the vehicle revealed a large used tire

inside the spare tire storage compartment that was not for the SUV. The tire was extremely heavy and did not have very much air inside. A ping test was performed which resulted that the Troopers believing that the tire contained some type of foreign object inside. Trooper Hyde pushed the valve stem and smelled a strange chemical odor emitting from inside the tire. Trooper Hyde cut the tire open and observed numerous cellophane wrapped bundles of a clear crystalline substance.

12. There was a total of 5 bundles concealed inside the Barbie and 40 bundles inside the spare tire. Trooper Hyde contacted the McAlester DEA Resident Office (MRO) and requested assistance. DEA Special Agents Pablo Orejuela and Willie Mosley met with Trooper Hyde at the Oklahoma Highway Patrol office in Sallisaw to interview **GOMEZ** and take possession of the methamphetamine.

13. SA Orejuela provided **GOMEZ** with a form displaying a written advice of rights in Spanish. SA Orejuela read **GOMEZ** the form in Spanish before asking **GOMEZ** if he understood his rights and if so, would he be willing to answer some questions. **GOMEZ** stated, "Yes" and signed the advice of rights form.

14. **GOMEZ** told agents the following: On October 27, 2021, **GOMEZ** met a Hispanic Male who he knew only by the nickname "Viejon" at a party in Whittier, California. Viejon offered **GOMEZ** $5,000 to travel from Los Angeles, California, to Raleigh North Carolina to deliver a package. Viejon told **GOMEZ** that he would be given additional instructions on where to drop off the package once he arrived in North Carolina. **GOMEZ** did not know what exactly he was transporting, but suspected he was transporting illegal drugs. On October 29, 2021, **GOMEZ** rented the Ford Escape in Whittier and drove it to a parking lot in Long Beach, California where he released it to Viejon.

15. On November 1, 2021, Viejon returned the vehicle to **GOMEZ,** paid him $3,000 in cash, and told **GOMEZ** that he would receive the remaining $2,000 upon delivery of the package in North Carolina. Later that day, **GOMEZ** and the juvenile set off for North Carolina. **GOMEZ** made overnight stops in Albuquerque, New Mexico, and Amarillo, Texas, prior to the traffic stop in Sallisaw Oklahoma on November 3, 2021.

16. Following the interview, Trooper Hyde transferred custody of the 45 packages of suspected methamphetamine and four cellular telephones to SA Mosley and me. 40 of the packages were of approximately the same size, packaged in a similar manner, and had an approximate weight of .45 kilograms (one pound). 4 of packages were vacuum sealed with one additional larger package wrapped in silver tape. Seven of the packages were randomly selected and the substance contained in each was field tested. Each of the tests indicated a positive result for the presence of methamphetamine. The total approximate weight of the substance was 23.6 kilograms.

17. Based upon my training and experience, that quantity of methamphetamine is consistent with a distribution quantity of methamphetamine, and I further believe that probable cause exists to show that **Eswin Noel GOMEZ** did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

_____
Pablo Orejuela
Special Agent
Drug Enforcement Administration


SWORN AND SUBSCRIBED to before me on this 4th day of November 2021.

_____
United States Magistrate Judge